UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT SEATTLE

| | |
|---|---|
| STUART O'FARRELL, <br><br> Plaintiff, <br><br> v. <br><br> PARKER SMITH & FEEK INC, <br><br> Defendant. | CASE NO. C17-637-MJP <br><br> ORDER GRANTING IN PART AND DENYING IN PART MOTION FOR SUMMARY JUDGMENT; <br><br> GRANTING IN PART AND DENYING IN PART MOTION TO STRIKE |

THIS MATTER comes before the Court on Defendant Parker, Smith & Feek, Inc.'s Motion for Summary Judgment (Dkt. No. 23) and Motion to Strike (Dkt. No. Dkt. No. 37). Having reviewed the Motion, the Response (Dkt. No. 36), the Reply (Dkt. No. 41) and the related record, the Court GRANTS IN PART and DENIES IN PART the Motion for Summary Judgment and GRANTS IN PART and DENIES IN PART the Motion to Strike. The Court declines to hear oral argument on the matter.

ORDER - 1

## Background

Plaintiff Stuart O'Farrell brings this action against his former employer, Defendant Parker, Smith & Feek, Inc. ("PSF") for (1) interference with rights to retirement benefits under the Employment Retirement Income Security Act ("ERISA") plan in violation of 29 U.S.C. § 1140 and (2) unlawful retaliation in violation of the Washington Law Against Discrimination ("WLAD"), RCW 49.60.210. (See Dkt. No. 1.)

### I. PSF's Deferred Compensation Plan

PSF is a privately-owned insurance and risk management brokerage firm that provides services in commercial insurance, surety bonding, risk management, claims supervision and auditing, personal insurance, and employee benefits. (Dkt. No. 28 at ¶ 2.) PSF offers its shareholders stock grants and the opportunity to participate in its Deferred Compensation Plan (the "Plan"), a retirement plan governed by ERISA. (Dkt. No. 27 at ¶ 2; Dkt. No. 39, Ex. C at Art. 11.) The Plan is intended to "reward shareholders for a lifetime career at PSF," and provides deferred compensation payments due upon retirement after age 60, death, or disability. (Id.) The Plan denies payments to those who resign before age 60 or who are terminated "with cause." (Id.)

### II. Mr. O'Farrell's Employment with PSF

Mr. O'Farrell was employed by PSF from 2001 until his termination in April 2014. (Dkt. No. 7 at ¶¶ 2, 14.) Until 2009, Mr. O'Farrell worked as an Account Executive, and was responsible for developing and maintaining client relationships and obtaining bond credit for clients. (Dkt. No. 29 at ¶¶ 2-3.) In this role, Mr. O'Farrell reported to Carl Newman, the Surety Department Manager. (Dkt. No. 27 at ¶ 2; Dkt. No. 37 at ¶ 4.) According to Mr. Newman, Mr. O'Farrell was "generous and cooperative with other account executives and staff," "well-liked

by clients," and "very good at developing and retaining business." (Dkt. No. 37 at ¶¶ 5-6.) Mr. O'Farrell was elected as a shareholder of PSF in 2005. (Dkt. No. 27 at ¶ 2.) As a shareholder, Mr. O'Farrell had the opportunity to participate in the Plan. (Id.)

In 2009, Mr. O'Farrell was unanimously selected to replace Mr. Newman as Surety Manager, a position which included the additional responsibilities of managing the Surety Department and overseeing its growth, profit, and client service initiatives. (Id. at ¶ 3; Dkt. No. 37 at ¶ 16.) As Surety Manager, Mr. O'Farrell reported directly to Greg Collins, PSF's President and CEO. (Dkt. No. 27 at ¶ 3.)

### III. PSF's Concerns About Mr. O'Farrell's Performance

PSF claims that Mr. O'Farrell struggled with the added responsibilities of Surety Manager. (Dkt. No. 27 at ¶ 4.) In 2010, after receiving complaints from clients and other employees concerning Mr. O'Farrell's responsiveness, inability to manage deadlines, and inability to maintain positive relationships with other account executives, PSF placed Mr. O'Farrell on a performance improvement plan. (Id. at ¶¶ 4-5; see also Exs. B, C.) Mr. Collins claims that although he warned Mr. O'Farrell that his job was "in jeopardy" and hired a performance coach to assist him, his performance did not improve. (Id. at ¶¶ 5-6.) In 2011, Mr. Collins demoted Mr. O'Farrell from Surety Manager to Surety Account Executive. (Id. at ¶ 6.)

PSF claims that between 2010 and 2014, Mr. O'Farrell continued to be the subject of client complaints, continued to lose business for the company, and continued to display a negative attitude. (Id. at ¶ 7.) In particular, PSF claims that Mr. O'Farrell behaved inappropriately during shareholder meetings following his demotion, and that he "asked questions, not in genuine interest, but with the apparent purpose of undermining the authority of management." (Id. at ¶ 8; Dkt. No. 36 at 7.)

### IV. Mr. Monteith's Termination

Mr. O'Farrell concedes that he "was not a perfect employee" and "occasionally missed deadlines or calls with his clients." (Dkt. No. 36 at 12.) However, Mr. O'Farrell claims that these "routine performance issues" were unremarkable, and that the reason for his termination was in fact retaliation for his objections to perceived mistreatment of another shareholder, Johnmichael Montieth. (Id; Dkt. No. 38 at ¶¶ 7-12.) In August 2013, PSF informed its shareholders that it had terminated Mr. Monteith with cause. (See Dkt. No. 39, Ex. Q.) Mr. Monteith was suffering from terminal cancer at the time, and his termination apparently caused Mr. O'Farrell concern. (Dkt. No. 40 at ¶ 7.) Mr. O'Farrell claims he began asking questions of PSF's executives and shareholders and, during a shareholder meeting on August 23, 2013, "continued to challenge the issue and object to PSF's treatment of Mr. Monteith." (Id. at ¶ 9.) Mr. Collins and other shareholders dispute this claim, and claim that Mr. O'Farrell did not object or raise any concerns at the meeting. (See Dkt. No. 25 at ¶ 2; Dkt. No. 26 at ¶ 7; Dkt. No. 27 at ¶ 15; Dkt. No. 30 at ¶ 10; Dkt. No. 34 at ¶ 2; Dkt. No. 35 at ¶ 2.)

### V. Mr. O'Farrell's Termination

On April 24, 2014, PSF terminated Mr. O'Farrell "with cause." (Dkt. No. 27 at ¶ 14; Dkt. No. 38 at ¶ 12.) Mr. O'Farrell was 44 years old at the time of his termination. (Dkt. No. 24, Ex. 2 at 36:12-15.) PSF claims it did so in response to "long-term, unresolved performance issues," including Mr. O'Farrell's "poor service" to clients and "disruptive and insubordinate behavior in shareholder meetings." (Dkt. No. 39, Ex. S.) Mr. O'Farrell claims it did so for the purpose of divesting him of the $1.5 million in retirement benefits he would have been owed under the Plan, and in retaliation for his objections to Mr. Monteith's termination. (See Dkt. No. 36.)

## Discussion

**I. Motion to Strike**

PSF moves to strike portions of the Declaration of Carl Newman. (Dkt. No. 37.) "A trial court can only consider admissible evidence in ruling on a motion for summary judgment." Orr v. Bank of Am., NT & SA, 285 F.3d 764, 773 (9th Cir. 2002). The Court finds that certain of the objected-to portions of Mr. Newman's declaration are not based upon personal knowledge. For example, Mr. Newman states that "I am also aware that PSF has accused Stuart of being insubordinate during shareholder meetings. . . . I believe that PSF's leadership unfairly perceived his questions as personal attacks." (Dkt. No. 37 at ¶ 14.) Mr. Newman states that, after his own retirement, "Stuart continued to perform above average in the most important areas for a surety account executive: revenue generation and retention." (Id. at ¶ 20.) Mr. Newman also states that "[i]t is my belief that one of the reasons PSF terminated Stuart 'with cause' was to strip him of his deferred compensation." (Id. at ¶ 22.) These statements appear to relate to events following Mr. Newman's retirement from PSF in 2010, and are therefore inadmissible. On the other hand, certain of the objected-to portions of Mr. Newman's declaration relate to his observations of Mr. O'Farrell and his knowledge of PSF's policies and practices before 2010, topics to which he is competent to testify. To the extent that statements in Mr. Newman's declaration are ambiguous as to time, the Court will construe them to apply only to the period before his retirement.

The Court therefore GRANTS IN PART and DENIES IN PART the Motion to Strike. The Declaration of Carl Newman is stricken with respect to paragraphs 14, 19, 20, 21, and 22.

**II. Motion for Summary Judgment**

    **A. Legal Standard**

Summary judgment is proper if the pleadings, depositions, answers to interrogatories, admissions on file, and affidavits show that there is no genuine issue of material fact and that the

moving party is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(c). The movant bears the initial burden to demonstrate the absence of a genuine dispute of material fact. Celotex Corp. v. Catrett, 477 U.S. 317, 323 (1986). A genuine dispute over a material fact exists if there is sufficient evidence for a reasonable jury to return a verdict for the non-movant. Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 253 (1986). On a motion for summary judgment, "[t]he evidence of the non-movant is to be believed, and all justifiable inferences are to be drawn in his favor." Id. at 255.

### B. ERISA Claim

Mr. O'Farrell's first claim against PSF alleges that it designated his termination as being "with cause" for the purpose of denying him benefits under the Plan in violation of ERISA § 510, 29 U.S.C. § 1140. (Dkt. No. 1.) ERISA § 510 provides:

> It shall be unlawful for any person to discharge, fine, suspend, expel, discipline, or discriminate against a participant or beneficiary for exercising any right to which he is entitled under the provisions of an employee benefit plan . . . or for the purpose of interfering with the attainment of any right to which such participant may become entitled under the plan [or] this title . . .

ERISA § 510 was enacted to "prevent persons and entities from taking actions which might cut off or interfere with a participant's ability to collect present or future benefits or which punish a participant for exercising his or her rights under an employee benefit plan." Tolle v. Carroll Touch, Inc., 977 F.2d 1129, 1134 (7th Cir. 1992) (citations omitted).

The Ninth Circuit has indicated that the burden-shifting framework of McDonnell Douglas applies to a claim brought under § 510. See Ritter v. Hughes Aircraft Co., 58 F.3d 454, 457 (9th Cir. 1995) (citing Dister v. Continental Grp., Inc., 859 F.2d 1108, 1111-12 (2nd Cir. 1988)). First, the plaintiff bears the initial burden of establishing a prima facie case (i.e., that he was terminated under circumstances sufficient to give rise to an inference of discrimination).

Dister, 859 F.2d at 1111.  Second, if the plaintiff establishes a prima facie case, the burden shifts to the employer to articulate "some legitimate, non-discriminatory reason for the termination.  Id. Third, the burden shifts back to the plaintiff to prove that the proffered nondiscriminatory reason is mere pretext.  Id.  Plaintiff also bears the ultimate burden of showing that his employment was terminated "because of a specific intent to interfere with ERISA rights."  Dytrt v. Mountain States Tel. & Tel. Co., 921 F.2d 889, 896 (9th Cir. 1990).  "[N]o action lies where the alleged loss of rights is a mere consequence, as opposed to a motivating factor behind the termination."  Id.

### 1. Failure to Exhaust Administrative Remedies

As an initial matter, PSF contends that Mr. O'Farrell's § 510 claim is for "wrongful denial of benefits" such that it should properly have been pled as a § 502(a) claim.  (Dkt. No. 23 at 13-14.)  As such, PSF contends that Mr. O'Farrell was required to exhaust his administrative remedies before commencing any legal action but failed to do so.  The Court finds these contentions unavailing.

"By its plan language, § 510 prohibits employers from engaging in adverse employment actions to avoid paying ERISA benefits or to retaliate against employees for claiming ERISA benefits."  Leaverton v. RBC Capital Markets Corp., Case No. 09-1804RSL, 2010 WL 3418270, at *5 (W.D. Wash. Aug. 26, 2010).  On the other hand, § 502(a) permits a plaintiff to recover "benefits due to him under the terms of his plan."  29 U.S.C. § 1332(a)(1)(B); see also Leaverton, 2010 WL 3418270, at *5 ("A claim for the wrongful denial of benefits . . . is to be treated as an ERISA § 502(a), not an ERISA § 510 claim.").  Mr. O'Farrell does not, and could not, claim that benefits are due to him under the Plan, as he is no longer a participant and was not owed benefits at the time of his termination.  Instead, Mr. O'Farrell claims that PSF terminated

1 him "with cause" to interfere with his ability to attain benefits under the Plan. This is not, as

2 PSF contends, a "simple contract claim dressed in statutory clothing." Cf. Madera v. Marsh

3 USA, Inc., 426 F.3d 56, 61-62 (1st Cir. 2005).

4 The Court finds that Mr. O'Farrell's claim is properly pled under ERISA § 510, such that

5 he was not required to exhaust his administrative remedies before commencing legal action.

**2. Specific Intent**

7 The Court finds that, even accepting Mr. O'Farrell's version of the facts, he has failed to

8 establish a prima facie case.

9 While Mr. O'Farrell contends that PSF's "specific intent to interfere with his benefit

10 rights" is evidenced by (1) the fact that the "with cause" distinction is only made with respect to

11 shareholders, (2) the fact that shareholders are only ever terminated "with cause," and (3) the fact

12 that PSF is "cost-conscious when it comes to deferred compensation obligations under the Plan"

13 (Dkt. No. 36 at 23-25), these facts do not establish that his termination was motivated by such

14 "specific intent." Ritter, 58 F.3d at 457.

15 The Plan, by its terms, only applies to shareholders, and its distinction between

16 termination "with" and "without cause" is based upon the "substantial risk of forfeiture"

17 provisions in Section 409A of the Internal Revenue Code. See 26 C.F.R. 1.409A-1(d)(1).

18 Further, PSF owes a fiduciary duty to participants to be "cost-conscious" with respect to the

19 Plan. (See Dkt. No. 39, Ex. D at 73:23-25.) Finally, Mr. O'Farrell was terminated at age 44, and

20 any cost savings to PSF as a result of his termination would not accrue for another 15 years. See,

21 e.g., Zbuka v. Marathon Ashland Petrol., LLC, 447 F. Supp. 2d 845, 853-54 (N.D. Ohio 2006)

22 ("A gap of several years between the adverse employment action . . . and the attainment of

23 ERISA rights is, without 'additional highly probative facts that suggest intentional

24

discrimination' . . . too great to be the basis of a prima facie case.") (citation omitted); Ingersoll-Rand Co. v. McClendon, 498 U.S. 133, 143 (1990) (describing termination of an employee, who had worked for the employer for over nine years, four months before his pension would have vested as the "prototypical" type of claim that Congress intended to cover under ERISA § 510); Dister, 859 F.2d at 1115 (finding prima facie case where employee was terminated four months before his rights were to vest).

Were the Court to find that PSF acted with specific intent based upon Mr. O'Farrell's version of the facts, *every* shareholder who is terminated for any reason could maintain a cause of action under § 510. In other words, it appears that Mr. O'Farrell's "loss of rights is a mere consequence, as opposed to a motivating factor, behind [his] termination." Dytrt, 921 F.2d at 896. Because Mr. O'Farrell has not set forth any facts giving rise to an inference of specific intent, the Court does not reach the remaining McDonnell Douglas factors. The Court GRANTS PSF's Motion for Summary Judgment as to Mr. O'Farrell's ERISA § 510 claim.

**C. WLAD Claim**

Mr. O'Farrell's second claim against PSF alleges that it terminated him in retaliation for his objections to PSF's treatment of Mr. Monteith in violation of RCW 49.60.210. (Dkt. No. 1.)

The WLAD prohibits employers from taking adverse employment actions against an employee based on protected conduct. Hines v. Todd Pac. Shipyards Corp., 127 Wn. App. 356, 374 (2005). A WLAD claim for retaliation is analyzed under the McDonnell Douglas framework, discussed supra. See Tyner v. State, 137 Wn. App. 545, 563-64 (2007). To establish a prima facie claim of retaliation, a plaintiff must prove that (1) he engaged in statutorily protected activity; (2) his employer took some adverse employment action against him; and (3) there is a causal connection between the protected activity and the adverse action. Id. "[I]f an

employee establishes that he or she participated in statutorily protected opposition activity, the employer knew about the opposition activity, and the employee was then discharged, a rebuttable presumption of retaliation arises that precludes summary dismissal of the case." Currier v. Northland Servs., Inc., 182 Wn. App. 733, 747 (2014).

### 1. Prima Facie Case

Mr. O'Farrell points to several instances in which he asked questions of PSF's executives and shareholders and challenged PSF's treatment of Mr. Monteith. In response to an August 21, 2013 email announcing Mr. Monteith's departure from PSF, Mr. O'Farrell inquired of PSF's Vice President and COO whether he had "walk[ed] away from his deferred comp." (Dkt. No. 39, Ex. Q.) Mr. O'Farrell claims he was concerned that Mr. Monteith had been terminated due to his disability, and stated that "[a]s a shareholder I would think this would be a reasonable request as it relates directly to our financial position and the liability that we may or may not have going forward." (Id.) Mr. O'Farrell also claims that he raised these concerns during an August 2013 shareholder meeting, and was thereafter reprimanded by Mr. Collins. (Dkt. No. 38 at ¶¶ 9-10.)

Mr. O'Farrell claims that, after he objected to Mr. Monteith's treatment, PSF began "manufacturing" a case for his termination. (Id. at ¶ 11.) For example, Mr. O'Farrell claims that PSF sought to revoke his ability to work remotely, which it had authorized several years earlier, despite being in the process of implementing a new policy to allow other employees to work remotely to accommodate a "growing space concern" and "the need to compete with . . . other organizations . . . offering remote work." (Id.; see also Dkt. No. 39, Ex. R at 117:3-13.) Mr. O'Farrell claims that PSF faulted him for failing to obtain pre-approval for certain client

entertainment expenses, despite having no policy requiring pre-approval or implementing a per-event limit on such expenses. (Dkt. No. 38 at ¶ 11; Dkt. No. 30, Ex. I.)

On April 24, 2014, PSF terminated Mr. O'Farrell. (Dkt. No. 27 at ¶ 14; Dkt. No. 38 at ¶ 12.) While PSF contends that the lack of temporal proximity between Mr. O'Farrell's claimed advocacy on Mr. Monteith's behalf and his termination precludes him from establishing a prima facie case, Mr. O'Farrell's contention is that it delayed doing so until it had completed its case against him.

While the evidence of a causal connection set forth by Mr. O'Farrell is both tenuous and disputed, "[t]he requisite degree of proof necessary to establish a prima facie case . . . on summary judgment is minimal and does not even need to rise to the level of a preponderance of the evidence." Villiarimo v. Aloha Island Air, Inc., 281 F.3d 1054, 1062 (9th Cir. 2002) (citation omitted). The Court finds that, accepting Mr. O'Farrell's version of the facts, he has established a prima facie case that PSF terminated him in retaliation for his objections to its treatment of Mr. Monteith.

### 2. Pretext

PSF claims that it terminated Mr. O'Farrell not for engaging in any protected activity, but rather because of his concerns about his job performance, client complaints, and misconduct. According to PSF, "[t]hese were the same types of concerns PSF had attempted to address with O'Farrell time and time again in 2010, 2011, 2012, and 2013." (Dkt. No. 23 at 20.) While the record indicates, and while Mr. O'Farrell concedes, that he "was not a perfect employee" (Dkt. No. 36 at 12), there is a factual dispute as to whether his performance and conduct were so relatively egregious as to warrant termination. Prior to Mr. O'Farrell's termination, the only

other shareholders terminated by PSF were those who had a "net negative" status, meaning they "lost more business than [they] brought in." (See Dkt. No. 39, Ex. H at 65:13-67:3, 67:19-23.)

While the evidence of pretext set forth by Mr. O'Farrell is similarly tenuous and disputed, the Court finds that, accepting Mr. O'Farrell's version of the facts, he has established that PSF's stated reasons for terminating him are pretextual. The Court DENIES PSF's Motion for Summary Judgment as to Mr. O'Farrell's WLAD claim.

**Conclusion**

The Court finds that Mr. O'Farrell has not set forth evidence in support of his ERISA § 510 claim, and therefore GRANTS PSF's Motion with respect to this claim.

The Court finds that, viewing the evidence in the light most favorable to Mr. O'Farrell, he has established a prima facie case of retaliation and has established that PSF's stated reasons for terminating him are pretextual, and therefore DENIES PSF's Motion with respect to this claim.

This case shall proceed to trial on Mr. O'Farrell's WLAD claim.

The clerk is ordered to provide copies of this order to all counsel.

Dated October 16, 2018.

Marsha J. Pechman
United States District Judge